UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| GERALD W. BECNEL | CIVIL ACTION |
| VERSUS | 17-1758-SDD-EWD |
| BP EXPLORATION & PRODUCTION, INC., ET AL. | |

### RULING

Before the Court is the *Motion to Exclude the Testimony and Opinions of Dr. Joseph Guttenplan*[1] and the *Motion for Summary Judgment*[2] filed by Defendants, BP Exploration and Production Inc. and BP America Production Company (collectively "BP"). Plaintiff, Gerald Becnel ("Becnel" or "Plaintiff"), opposes both motions.[3] BP also filed a *Reply*[4] to Becnel's *Memorandum in Opposition* to the *Motion for Summary Judgment*. For the reasons which follow, both motions shall be GRANTED.

This is a toxic tort BELO[5] action arising out of the Deepwater Horizon oil spill. The plaintiff, Gerald Becnel, worked in spill response as a vacuum truck driver where, he alleges, he came in contact with oil which caused him to develop "multiple skin rashes, stomach problems, headaches, and skin infections."[6] Becnel worked on a daily basis from April 2010 until August 2010. Three years later, he presented and was diagnosed with a

---

[1] Rec. Doc. No. 35.
[2] Rec. Doc. No. 36.
[3] Rec. Doc. No. 41; Rec. Doc. No. 42.
[4] Rec. Doc. No. 44.
[5] Back-End Litigation Option permitting certain class members who followed procedures outlined in the settlement to sue BP for physical conditions which arose after the spill and settlement.
[6] Rec. Docs. 41, 41-1, p. 3.

pleomorphic adenoma of the salivary gland from the left maxilla (the parotid salivary gland).[7] Dr. Joseph Guttenplan, PhD, was retained by Plaintiff to provide medical causation opinion testimony. Ultimately, Plaintiff seeks to offer Dr. Guttenplan to opine that the plaintiff's spill response work exposed him to enough crude oil and dispersants to contribute to the development of cancer.[8]

BP challenges Guttenplan's qualifications and the reliability of his opinions. The standard for the admissibility of expert testimony is governed by Federal Rule of Evidence 702, as explained by *Daubert* and its progeny. Opinion testimony is admissible under the Federal Rules of Evidence if (1) the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the expert's reasoning or methodology underlying the testimony is sufficiently reliable, and (3) the testimony is relevant.[9] The party offering expert testimony is not required to establish the correctness of the opinion; rather, the proponent of the opinion testimony bears the burden of establishing "by a preponderance of the evidence that the testimony is reliable."[10] "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702."[11]

In toxic tort cases, the Fifth Circuit has provided specific guidance regarding the admissibility of causation opinion testimony. First, the expert must establish general causation which inquires as to "whether [the] substance is capable of causing a particular

---

[7] *Id.*, Rec. Doc. No. 35-4.
[8] Rec. Doc. Nos. 35-2, 35-3.
[9] Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[10] *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269, 276 (5th Cir.1998), *cert. denied,* 526 U.S. 1064 (1999).
[11] *Munoz v. Orr,* 200 F.3d 291, 301 (5th Cir. 2000); *Ricks v. City of Alexandria,* No. 12-0349, 2014 WL 4274144, at *8 (W.D. La., 2014).

injury or condition in the general population."[12] Next the expert must establish specific causation; that is, whether the substance caused this plaintiff's injury.[13] The parties are in agreement regarding the two-step admissibility inquiry.[14]

BP relies heavily on the Fifth Circuit's recent opinion in *McGill v. BP Exploration and Production*.[15] Plaintiff distinguishes *McGill*, arguing that the expert in *McGill* was a pulmonologist whereas, Plaintiff argues, Guttenplan is a "is a multi-disciplinary expert with extensive experience in carcinogenesis and toxicology."[16]

**I.    QUALIFICATIONS**

Defendants dispute that Guttenplan is a "multidisciplinary expert." Defendants maintain that Guttenplan lacks the qualifications to provide medical causation opinion testimony because he is not a medical doctor, has his Ph.D. in chemistry, holds no degrees or certifications and toxicology and has not previously consulted in matters involving crude oil, dispersants or oil spill response related exposures.[17] Plaintiff counters that Guttenplan has been a researcher for over 40 years in the area of carcinogenesis and has published over 80 peer-reviewed papers, published in the field of biochemistry, as well as served at the National Institutes of Health and the World Health Organization review committees.[18]

---

[12] *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 351 (5th Cir. 2007).
[13] *Id*.
[14] Rec. Doc. No. 41.
[15] 2019 WL 6053016, at *2 (S.D. Miss. Nov. 15, 2019), *aff'd*, No. 19-60849, 830 Fed. Appx. 430 (5th Cir., Oct. 12, 2020).
[16] Rec. Doc. No. 41, p. 1.
[17] Rec. Doc. No. 35-1.
[18] Rec. Doc. No. 35-2, p. 2.

## II.    METHODOLOGY

Dr. Guttenplan succinctly explained the analytical framework he employed in his causation analysis. Is there a "connection between Mr. Becnel's exposure and his cancer? To answer this question, it is necessary to consider the route of exposure, the nature of the toxicants and the characteristics of the disease."[19]

Guttenplan opines that "[t]here is evidence [generally] that exposure to crude oil leads to cancer."[20] To reach this opinion, Guttenplan cites studies from Norway, South America, studies of Texaco workers, and experimental studies in animals.[21] Guttenplan then reviews the processes of carcinogenesis and the study, generally, of cancer formation. Finally, Guttenplan reviews the toxicity generally of crude oil and Corexit, an oil dispersant.

While these studies may suffice to move the needle on causation, they fail to do so reliably and are insufficient to support the conclusion that crude oil and/or Corexit caused Mr. Becnel's salivary cancer.  Guttenplan admits that there is no epidemiological literature which causally connects exposure to crude oil or dispersants and salivary cancer.[22] Reliance on animal experiments, in the absence of epidemiological studies, is, as noted by the Fifth Circuit, "of very limited usefulness."[23] Indeed, Guttenplan acknowledges that it is inappropriate to base a causation opinion purely on the results of experimental animal studies.[24]

---

[19] *Id*. at p. 4.
[20] *Id*. at p. 6.
[21] *Id*.
[22] Rec. Doc. No. 35-4, p. 169-171.
[23] *Allen v. Pennsylvania Engineering Corp.*, 102 F.3d 194, 197 (5th Cir. 1996)(quoting *Brock v. Merrill-Down Pharmaceuticals, Inc.,* 874 F.2d 307, 313 (5th Cir. 1989)).
[24] Rec. Doc. No. 35-4, p. 151.

Notably, and fatal to the proposed expert testimony, Guttenplan conceded that "there's insufficient literature to establish a -- that -- that occupational or environmental exposures can cause salivary gland cancer."[25] Guttenplan admits that to make the causal link "[y]ou have to define dose."[26] There is no dose data in this case. Dr. Guttenplan testified as follows:

> Q: Did you perform any mathematical calculation necessary to determine the dose of crude oil or dispersants or their constituents to which the plaintiff was exposed?
> A: No.
> Q: So for Mr. Becnel, what did you use as the dose in question?
> A: I didn't calculate a dose. I couldn't. It was too far removed.[27]

The Court finds that without dose data, conclusions and opinions on causation are speculative and unreliable.[28] Accordingly, Defendants' *Motion in Limine*[29] shall be granted.

### III.   THE *MOTION FOR SUMMARY JUDGMENT*

BP's *Motion for Summary Judgment* largely tracks its arguments from the *Motion in Limine*. Indeed, Becnel acknowledges that BP's summary judgment motion "is based on nearly identical grounds to its *Motion to Exclude the Testimony and Opinions of Dr. Joseph Guttenplan* filed on the same day.[30] Becnel asserts, and the Court agrees, that "[t]he resolution of both motions depends on whether the Court (1) accepts Dr. Joseph Guttenplan as an expert and, if so, (2) finds his testimony to be sufficient under the

---

[25] Rec. Doc. No. 35-4, p. 254.
[26] *Id*.
[27] Rec. Doc. 35-4, p. 195.
[28] *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991), *cert. denied*, 503 U.S. 912 (1992).; *Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 278(5th Cir. 1998); *Thompson v. S. Pac. Transp. Co.*, 809 F.2d 1167, 1169 (5th Cir. 1987) .
[29] Rec. Doc. No. 35.
[30] Rec. Doc. No. 42, p. 1.

applicable law."[31] Above, this Court found that Dr. Guttenplan's proposed testimony was insufficiently reliable and granted BP's *Motion in Limine*, which has the effect of preventing Becnel from being able to establish causation. Accordingly, the *Motion for Summary Judgment*[32] shall be GRANTED, for the reasons stated above.

## IV.   CONCLUSION

For the above reasons, BP's *Motion to Exclude the Testimony and Opinions of Dr. Joseph Guttenplan*[33] and *Motion for Summary Judgment*[34] are hereby GRANTED and Plaintiff's claims dismissed with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>September 28, 2021</u>.

                                                        *Shelly D. Dick*
                         **CHIEF JUDGE SHELLY D. DICK
                         UNITED STATES DISTRICT COURT
                         MIDDLE DISTRICT OF LOUISIANA**

---

[31] *Id*.
[32] Rec. Doc. No. 36.
[33] Rec. Doc. No. 35.
[34] Rec. Doc. No. 36.

69267